# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

TERRY L. REED, JR.,                    )
                                       )
      Plaintiff,                  )          Case No. 3:14-cv-01374
                                       )          Senior Judge Haynes
v.                                     )
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security, )
                                       )
      Defendant.                  )

## MEMORANDUM

Plaintiff, Terry L. Reed, Jr., filed this action under 42 U.S.C. § 405(g) against the

Defendant Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of

the Commissioner's denial of his application for Disability Insurance Benefits (DIB) and

Supplemental Security Income Benefits (SSI) under Title II of the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the record (Docket Entry No. 14)

contending, in sum, that the Administrative Law Judge ("ALJ") erred by concluding Plaintiff's

condition had improved as of October 10, 2012 and awarding a closed period of benefits; by

failing to consider Plaintiff's impairments in combination; and by finding Plaintiff's testimony

not fully credible. The Commissioner contends that the ALJ's decision is supported by

substantial evidence.

The ALJ evaluated Plaintiff's claims using the sequential evaluation process set forth at

20 C.F.R. § 416.920. (Docket Entry No. 11, Administrative Record at 81-82). At step one, the

ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2010, the

1

alleged onset date of disability. Id. at 83. At step two, the ALJ determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease, status post fusion; history of carpal tunnel syndrome, status post release; and anxiety disorder. Id. at 84. These impairments "significantly limit the claimant's ability to perform basic work activities." Id. At step three, the ALJ limited the period of disability to April 24, 2010 to October 9, 2012. Id. at 84. The ALJ found that for this period Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. At step four, the ALJ determined that for this period Plaintiff had the residual functional capacity to perform sedentary work, but was not able to sustain concentration, persistence, and pace for two hour segments due to pain. Id. At step five, the ALJ stated that Plaintiff is not capable of performing past relevant work, and could not perform other work during the period of April 24, 2010 to October 9, 2012. Id. at 86. The ALJ stated that "if the claimant had the residual functional capacity to perform the full range of sedentary work ... a finding of 'not disabled' would be directed ... However, the additional limitations narrowed the range of work the claimant could have performed to the extent that a finding of 'disabled' is appropriate under the framework of this rule." Id. For this closed period, the ALJ concluded that Plaintiff was disabled. Id. at 87.

Next, the ALJ found that "[m]edical improvement occurred as of October 10, 2012" and on this date, Plaintiff's disability ended. Id. For a closed period of benefits, the ALJ determines the end date by following an eight-step evaluation process set forth at 20 C.F.R. § 404.1594. At step one, the ALJ reiterated that Plaintiff is not engaging in substantial gainful activity. Id. at 83. At step two, the ALJ found that Plaintiff did not have an impairment or combination of

2

impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 87. At step three, the ALJ found that medical improvement had occurred. Id. At step four, the ALJ found that Plaintiff's medical improvement was related to his ability to work. Id. at 89. Step five is to determine whether there is an exception to medical improvement, and step six is to determine whether the impairments are severe. Id. at 83. The ALJ did not address these. At step seven, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of sedentary work, with the following non-exertional limitations: can understand and remember for simple, detailed, and multi-step detailed tasks, but not at an executive level; can maintain concentration, persistence, and pace for the above tasks; can interact appropriately with the public, co-workers and supervisors within the restrictions applied above; and can adapt to change and set goals within the restrictions applied above. Id. at 87. At step eight, the ALJ utilized the testimony of the vocational expert to conclude that Plaintiff is not capable of performing past relevant work, but that Plaintiff could perform certain other work. Id. at 90. The ALJ concluded that Plaintiff's disability ended on October 10, 2012. Beginning October 10, 2012, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to disability benefits. Id. at 90. Following this decision, Plaintiff requested a review. Id. at 61. Plaintiff's request for review was denied on April 23, 2014. Id. at 1.

## A. Review of the Record

Plaintiff was 36 years old at the time of application. He has received a high school education, and graduated with a special education diploma. Plaintiff's alleged onset date of disability is April 24, 2010. The Administrative Record contains medical reports beginning on

3

November 16, 2004, when Plaintiff was treated for tendinitis and carpal tunnel syndrome. Id. at 289-339. On November 6, 2006, Plaintiff underwent surgery to correct these issues. Id. at 333. In 2006, Plaintiff was evaluated by Woodbury Medical Center for pain management in connection with a previous back surgery. Id. at 340-362. After April 24, 2010, Plaintiff continued to see the physicians at Woodbury. Id. at 341-352. Plaintiff consistently reported severe, constant pain in his lower back. Id. Plaintiff was taking pain medication, but his level of pain fluctuated, and during several months his pain continued to worsen. Id. at 344, 345, 348, 349, 351. During this time, Plaintiff also reported depression, anxiety and insomnia. Id. at 341-49. In April 2011, Plaintiff was discharged from Woodbury Medical Center. Id. at 377.

On October 27, 2010, Plaintiff began seeing Dr. James Fish, "complaining of a significant amount of low back pain that has been going on for the past 4 years." Id. at 364. In November 2010, Plaintiff told Dr. Fish that he had "some type of injection" that helped to treat his pain. Id. at 366. At this point, Dr. Fish advised Plaintiff "that his MRI results were essentially unremarkable, therefore [he] discussed with [Plaintiff] the fact he really does not have anything structurally wrong with him that is going to require treatment from a surgical perspective." Id. In December 2010, Plaintiff was reporting pain at a level of seven out of ten while taking four Percocet daily, but still asked "to get off the pain medications if at all possible." Id. at 368. Dr. Fish informed Plaintiff that there were no surgical options. Id. In January 2011, Plaintiff returned with "excruciating pain in his low back," while taking four oxycodone pills a day. Id. at 370. At this appointment, Dr. Fish suggested a transforaminal lumbar interbody fusion surgery, which Plaintiff elected to undergo. Id. at 370, 379-82. Following the procedure, Plaintiff continued to have some "expected" paid and his oxycodone prescription was increased from

4

15mg up to four times a day to 30mg up to seven times a day. Id. at 372. In May 2011, Plaintiff

reported that with the medication, his pain was "still averaging anywhere from 4 to 6 out of 10."

Id. at 373. On April 18, 2011, Plaintiff's pain was "mildly improved" but still "averaging 4-5/10

on a daily basis" while taking oxycontin and morphine. Id. at 375. Plaintiff was also "anxious to

start outpatient physical therapy in the next month or 2 once he saves up enough money." Id. In

April 2011, Plaintiff was reporting pain at a level of six to seven out of ten with medication, and

at this time he was discharged from Woodbury and referred to another pain management center,

though he was not satisfied with their care. Id. at 377. In November 2011, Plaintiff requested to

be transferred to a home program due to financial issues. Id. at 389. Plaintiff's records from Dr.

Fish's office do not note problems with depression, anxiety, or insomnia.

Between June 14, 2011 and September 14, 2011, Plaintiff was also attending physical

therapy approximately twice a week. Id. at 580-600. On his initial visit, the physical therapist

listed as Plaintiff's "current therapy problem list": pain that affects activities of daily living;

decreased range of motion; decreased tolerance to sitting, sleeping, prolonged positioning and

sport/recreational activities. Id. at 580. Plaintiff gave a history of "mid back surgery in '03 after

[motor vehicle accident]" and the "L5-S1 fusion on 1-25-11." Id. at 581. Throughout treatment,

Plaintiff reported gradually decreasing pain and increasing ability, compliance with the home

exercise plan, and satisfaction with the results. Id. at 580-600. The physical therapist noted on

each visit that "patient is progressing toward achievement of treatment goals as expected." Id.

On August 24, 2011, Plaintiff reported that he had received a TENS unit from "a pain clinic" and

on August 26, 2011, Plaintiff reported that "it has helped a lot." Id. at 593-94. On September 9,

2011, the physical therapist noted that Plaintiff's pain was "still elevated today, 4-5/10" but also

noted that "patient had decreased symptoms today." Id. at 599. Plaintiff's final record is on

September 14, 2011. Id. at 600.

Plaintiff was also treated by Dr. James Roth from May to December of 2011. Id. at 420-

453. On May 23, 2011, Dr. Roth recorded that Plaintiff "wants off all pain medications if he can

get off." Id. at 393. Dr. Roth also noted that Plaintiff "is on rather high dosing of pain

medications and wants to try to decrease the dosages." Id. Plaintiff reported chronic, severe pain

at a level of six to seven out of ten. Id. On June 20, 2011, Dr. Roth noted that Plaintiff was

"having a great deal of pain," severe pain at a level of seven out of ten. Id. at 399. On July 27,

2011, Dr. Roth noted "in my medical opinion he has a 85% physical disability." Id. at 403. On

October 18, 2011, Plaintiff reported that he had "more pain" and that "medication is not

helping." Id. at 411. On November 14, 2011, Plaintiff reported no change in his pain levels and

pain at a level of seven out of ten; he was being prescribed methodone six times a day. Id. at

414-417. On December 12, 2011, Plaintiff reported that the medication was helping, but also

that his pain was at a level of nine out of ten daily. Id. at 450. Plaintiff's last appointment was

on March 8, 2012, when he reported some relief from pain. Id. at 480. Plaintiff did not continue

with Dr. Roth because the practice no longer accepted his insurance. Id. at 525.

On April 23, 2012, Plaintiff began treatment at The Pain Management Group. Id. at 509-

60. Plaintiff was put on short-term opiod therapy for the following impairments: post-

laminectomy syndrome (lumbar), pain in thoracic spine, lumbar radiculopathy and pain in limb.

Id. at 528-29. During his initial visit, Plaintiff provided this history:

> Patient states he has had right arm pain, mid-back pain, and low back pain that
> radiates into his leg since he had a car wreck in 2002. Patient states he has had two
> back surgeries: first done in 2003 by Dr. O'Brien and the second one in 2010 by Dr.

Fish where he placed pins in his back. Patient states that he has had five surgeries on his right arm since 2007 related to nerve damage.

Id. at 525.

Plaintiff also reported that his pain was constant and "at its best is level (0-10) 5." Id. at 517. On May 22, 2012, Plaintiff reported that his pain was still constant, but was relieved by rest and medication. Id. at 511. Plaintiff reported that "with medications, pain is 4/10." Id. On June 20, 2012, Plaintiff reported that his symptoms had worsened and was no longer relieved by rest or medication. Id. at 557. Plaintiff still reported pain at a level of four out of ten with medication and constant pain. Id. Also on June 20, 2012, Plaintiff underwent a CT scan. Id. at 510. On July 17, 2012, the physician reviewed Plaintiff's CT scan and noted a "legitimate indication for a trial of caudal epidural injections" based on the CT scan. Id. at 553.

The next medical record from The Pain Management Group is dated October 10, 2012, the day after the awarded closed period of benefits. Id. at 570-79. This record indicated that Plaintiff reported "causal ESIs did not help except the first one." Id. at 570. Plaintiff also reported that his pain was constant, but relieved by rest, and was at a level of three out of ten with medication. Id.

Plaintiff also attended several consultive examinations in connection with his disability claim. On January 5, 2012, Plaintiff was evaluated at the office of Dr. Timothy Fisher. Id. at 454-57. Plaintiff reported a history of elbow, hand and back surgeries, from "what [the examiner] can gather." Id. at 454. Regarding the first back surgery, the examiner noted that she "cannot really gather an exact reason why this was performed; however, it was not for fracture." Id. None of Plaintiff's records was provided at this evaluation. Id. After hearing Plaintiff's

7

medical history and performing an exam, the examiner concluded that "I feel that [Plaintiff] will have a great deal of difficulty performing jobs, which require standing, bending, or twisting motions. He may be able to perform jobs, which require sitting, lifting 1 to 10 lbs occasionally." Id. at 457.

On January 17, 2012, a review of Plaintiff's records was conducted by Dr. Joseph Curtsinger. Id. at 458-467. This physical residual functional capacity assessment ("RFC") limited Plaintiff to lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking for 6 hours; sitting for 6 hours; and unlimited pushing and/or pulling. Id. at 459. Postural limitations allowed frequent climbing, balancing, stooping, kneeling, crouching and crawling. Id. at 460. Although a previous medical source conclusion was in the record, Dr. Curtsinger noted that "CEMA given of no [weight]. Far too restrictive." Id. at 464. Dr. Curtsinger also noted in Plaintiff's history, "back did well then [claimant] ends up in pain [management] when evidence shows him improving." Id. at 465. Regarding credibility, Dr. Curtsinger wrote, "credibility of statements considered partial based upon [symptoms] out of proportion to findings and DAA problems [with] methadone [treatment] currently." Id. Plaintiff's request for benefits was denied on February 9, 2012. Id. at 124.

Plaintiff requested reconsideration on April 4, 2012. Id. at 130. On May 25, 2012, Dr. James Gregory reviewed Plaintiff's file. Id. at 486. Dr. Gregory wrote:

> [Claimant] has no new physical allegations, but does allege worsening of physical and has had additional physical treatment.
> Comparison of [claimant's] forms submitted at recon with those submitted at initial shows that [claimant's] activities have not significantly changed; [claimant] gets kids ready for school, drives, shops, takes care of pets, watches TV, prepares meals, visits with family and friends.
> ...

Additional [Medical Evidence of Record] does not reveal significant change in functioning, and current evidence does not warrant a change in the initial assessment.

Id. Dr. Gregory affirmed the assessment from January 17, 2012. Id.

On May 30, 2012, a psychological evaluation was conducted. Id. at 487-490. The evaluator reported that Plaintiff "has never had treatment through a mental health clinic. He somewhat discounted any significant mental health issues." Id. at 488. Plaintiff did report that he was anxious, and "may worry '40% of the time'" about bills and about his inability to do things with his children. Id. Plaintiff also reported insomnia due to physical discomfort, and an inability to participate in activities he used to enjoy due to his medical issues. Id. At the time, all three of Plaintiff's children lived with him, and visited their mother occasionally. Id. at 487. Plaintiff's mother and father also live nearby, and help with household chores. Regarding the children, the evaluator wrote:

> His kids do most of the other chores because of the claimant's medical issues. He will try to mow the yard occasionally, but usually cannot do that and his kids or his father will take care of that.
> ...
> They have one housedog and the kids have horses that they generally take care of. If they are gone, he will feed the horses. They live on a small farm, but the claimant reported having no regular outdoor chores that he is responsible for.

Id. at 488. For the functional assessment, the evaluator found that Plaintiff was limited in these areas: "[h]is ability to sustain concentration and attention for appropriate periods of time in a structured routine job setting would appear mildly limited to possibly moderately so if under stress. The claimant reported having difficulty with concentration if he is in significant physical discomfort as well." Id. at 489.

On June 5, 2012, a psychological records review was conducted by Dr. George Davis

PhD. Id. at 491-504. The category under which Plaintiff's records were evaluated was "12.06

Anxiety-Related Disorders." Id. at 491. This evaluator listed mild limitations for Plaintiff's

activities of daily living and difficulties in maintaining social functioning, and a moderate

limitation in difficulties maintaining concentration, persistence, or pace. Id. at 501. The

evaluator concluded:

> [Claimant] has the medically determinable impairment of Anxiety [Disorder] [not
> otherwise specified]. This [medically determinable impairment] can reasonably be
> expected to produce the above stated symptoms. [Claimant's] statements are credible
> and [claimant] reports no more than moderate limitations.
> ...
> [Claimant's] [symptoms] and impairments would not singly or in combination
> prevent [claimant] from completing or sustaining work-like activities; however,
> concentration, persistence and pace are somewhat impacted by the diagnoses and
> therefore would cause moderate limitations in basic work-like duties.

Id. at 503.

Also on June 5, 2012, Dr. Davis used Plaintiff's record to determine his mental RFC.

Id. at 505-508. Dr. Davis allowed a moderate limitation in only two areas of functioning: the

ability to maintain attention and concentration for extended periods, and the ability to complete a

normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods. Id. at

505-06. On this evaluation, Dr. Davis concluded:

> A. Claimant can understand and remember for simple, detailed, and multi-step
> detailed tasks, but not at an executive level.
> B. Claimant can maintain concentration, persistence and pace for the above tasks.
> C. Claimant can interact appropriately with the public, co-workers and supervisors
> within the restrictions applied above.
> D. Claimant can adapt to change and set goals within the restrictions applied above.

Id. at 507.

Plaintiff's request for reconsideration was denied on June 6, 2012. Id. at 131. On July

19, 2012, Plaintiff requested a hearing. Id. at 134. On August 23, 2012, a case analysis was

conducted using Plaintiff's records. Id. at 561-63. This analysis concluded:

> Our medical staff opined the claimant could perform a light range of work activity, with occasional climbing ladder/rope/scaffolds, crawling, limited in handling, fingering, and feeling. Claimant can understand and remember for simple, detailed, and multi-step detailed tasks but not at an executive level. Can maintain concentration, persistence and pace, can interact appropriately with the public, co-workers and supervisors. Can adapt to change and set goals.

Id. at 563.

The evaluator referred to these as "light restrictions." Id. This is the same RFC given on

June 5, 2012, and the same RFC eventually given by the ALJ at the hearing.

On August 28, 2012, another physical RFC was conducted based on Plaintiff's medical

records. Id. at 564-69. In this RFC, Plaintiff was limited to lifting and/or carrying 20 pounds

occasionally, 10 pounds frequently; standing and/or walking 6 hours per day; sitting 6 hours per

day; and unlimited pushing and/or pulling. Id. at 565. For postural limitations, Plaintiff was

limited to frequent climbing of ramps/stairs, balancing, kneeling, and crouching. Id. at 566.

Plaintiff was limited to occasional climbing of ladders/ropes/scaffolds, stooping, and crawling.

Id. Plaintiff was also limited in handling, fingering, and feeling. Id. The evaluator also noted

that Plaintiff was "[g]iven consideration for [complaints of] pain. Overall, partially credible.

Given some [weight]. [Claimant's] alleged symptoms and functional limitations are reasonably

[consistent with] [medically determinable impairments], but evidence supports this rating." Id. at

369.

Plaintiff's hearing was held on November 29, 2012. Id. at 80. The decision granting

Plaintiff a closed period of benefits was issued on January 31, 2013. Id. at 76. Plaintiff

requested review on March 27, 2013. Id. at 61. This request was denied on April 23, 2014. Id. at

1.

## B. Conclusions of Law

A "disability" is defined by the Social Security Act as an inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42

U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based

upon the record made from the administrative hearing process. Jones v. Secretary, 945 F.2d

1365, 1369 (6th Cir. 1991). The purpose of review is limited to determination of (1) whether

substantial evidence exists in the record to support the Commissioner's decision, and (2) whether

any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary,

803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec'y, 486 F.3d 234,

241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th

Cir. 1994)).

As an initial matter, Plaintiff submitted to the Appeals Council several records that had

not been presented to the ALJ. Id. at 8-52, 64-75. Evidence not presented to the ALJ "cannot be

considered part of the record because [Plaintiff] submitted those notes for the first time to the

Appeals Council in support of [his] request for review of the ALJ's decision. We have

repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g)." Curler v. Comm'r of Soc. Sec'y, 561 F. App'x 464, 472 (6th Cir. 2014) (citing Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2006)). "Rather, the only vehicle for consideration of the later evidence from [physicians] is the remand described in the sixth sentence of 42 U.S.C. § 405(g), for agency review of new and material evidence that for good cause shown was not earlier incorporated into the record." Paulin v. Astrue, 657 F.Supp.2d 939, 948 (M.D. Tenn. 2009).

"[T]he statute is quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence. In particular, it must be shown (i) that the evidence at issue is both 'new' and 'material,' and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.' The party seeking remand bears the burden of showing that these two requirements are met." Hollon ex rel. Hollon v. Comm'r of Soc. Sec'y, 447 F.3d 477, 483-84 (6th Cir. 2006). Although Plaintiff includes a recitation of these new records in his memorandum, he does not attempt to show that the records are new and material, or to show that good cause exists for the failure to present them at the hearing. Most of the records are from appointments conducted after the date of the hearing, showing that they are new in that they were "not in existence or available to the claimant at the time of the administrative proceeding." Hollon, 447 F.3d at 484 (quoting Foster, 279 F.3d at 357. "Such evidence, in turn, is deemed 'material' if 'there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" Id. (quoting Foster, 279 F.3d at 357). Plaintiff bears the burden to make this showing, and has failed. As such, the evidence in the administrative record that was

not provided to the ALJ will not be considered by this Court. Further, this action will not be remanded to the ALJ on these grounds.

The ALJ awarded Plaintiff a closed period of benefits from April 24, 2010 to October 9, 2012. Id. at 87. The ALJ found that medical improvement occurred on October 10, 2012 and Plaintiff's disability ended on that date. Id. Plaintiff does not allege an error for the period of April 24, 2010, his onset date of disability, to October 9, 2012. Plaintiff asserts that the period of disability should have been left open to continue after October 9, 2012. Plaintiff assigns errors to the ALJ's decision to apply a closed period of benefits, the ALJ's failure to consider Plaintiff's impairments in combination, and the ALJ's determination of Plaintiff's credibility.

### 1. Closed Period of Benefits

The ALJ based his decision to close the period of benefits on three factors: (1) on October 10, 2012, Plaintiff reported to physicians that his pain was at a level of three out of ten with medications, (2) a CT scan revealed, in the ALJ's words, "some postoperative changes, but they were described as mild. Additionally, there was no osseous or hardware abnormality," and (3) Plaintiff's activities of daily living, including raising three children. Id. at 88-89. Plaintiff's argument in his memorandum is largely a recitation of facts from the record. His argument appears to be "the claimant asserts that he did not experience medical improvement on October 10, 2012, as shown by the aforesaid records, and that he continues to be '**unable to sustain concentration, persistence, and pace for 2-hour segments of time due to pain.**'" (Docket Entry No. 15 at 10, emphasis in original).

First, the ALJ referenced two medical records reflecting Plaintiff's decreased pain: "[i]n July 2012, the claimant admitted that his pain had decreased to 5/10 on an increasing pain scale.

14

And by October 10, 2012, the claimant told physicians that his pain had decreased to 3/10."
(Docket Entry No. 11 at 88, 550, 570). The October 10, 2012 visit is the last record included in
the evidence presented to the ALJ. Plaintiff regularly reported pain levels as low as four out of
ten with medication, such as in March 2011, April 2011, September 2011, May 2012, and June
2012. Id. at 373, 375, 599, 511, 510. The ALJ does not indicate why a pain level of three out of
ten indicates medical improvement, while a pain level of four out of ten does not.

Additionally, following Plaintiff's reports of slightly improved pain were reports of
heightened pain. In April 2011, after reporting pain at four out of ten in March and the same at
another appointment in April, Plaintiff reported pain at a level of six to seven out of ten with
medication. Id. at 377. In May 2011, Plaintiff again reported pain at a level of six to seven out
of ten with medication. Id. at 393. In June 2011, Plaintiff reported pain at seven out of ten with
medication. Id. at 399. Because the final record before the ALJ was that of October 10, 2012,
there was no evidence to show whether in the next month Plaintiff would have reported increased
pain. The ALJ does not address this pattern, nor does he describe why he affords the months of
reported decreased pain more weight than the following reports of increased pain.

Further, Plaintiff consistently reported that his pain was "constant (100% of the time),"
even when he reported pain at a level of three out of ten. The ALJ does not address Plaintiff's
constant pain.

Next, the ALJ referenced Plaintiff's medical improvement. When a claimant alleges
severe pain as part of his disability claim, the ALJ is required to address the underlying medical
issue. "[S]ubjective allegations of disabling symptoms, including pain, cannot alone support a
finding of disability... [T]here must be evidence of an underlying medical condition and (1) there

must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." Duncan v. Sec'y, Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

Regarding the medical issues underlying Plaintiff's complaints of pain, the ALJ found that "diagnostic findings support improvement in the claimant's back after surgery." Id. at 88. The ALJ references a June 2012 CT scan that showed, according to the ALJ, "some postoperative changes, but they were described as mild. Additionally, there were no osseous or hardware abnormality." Id. at 88, 510. While the ALJ concludes that this CT scan showed improvement, Plaintiff's treatment provider ordered further treatment after reviewing the results. When Plaintiff returned to The Pain Management Group to review his CT scan, it was recommended that Plaintiff undergo lumbar epidural steroid injections. Id. at 553. This was due in part to Plaintiff's CT scan, showing "[r]adiculopathy documented by imaging. Findings on imaging show spinal stenosis with impingement on contiguous nerves." Id. Further, Plaintiff's symptoms had "been unresponsive to conservative treatment: oral medications [and] rest/limited activity." Id. Plaintiff eventually had these injections, though he noted that only the first one was effective. Id. at 570.

Finally, the ALJ relied on the opinion of two state consultants. The ALJ assigns "significant weight" to the opinions of Drs. Fisher and Davis, and "little weight" to other state medical consultants. Id. at 89. Plaintiff was physically examined at Dr. Fisher's office, while the other state medical consultants performed only a records review. Id. at 454-57. The evaluation was on January 5, 2012, and the examiner concluded that Plaintiff "will have a great deal of

difficulty performing jobs, which require standing, bending, or twisting motions. He may be able to perform jobs, which require sitting, lifting 1 to 10 lbs occasionally." Id. at 457. Plaintiff also reported that "pain is constant and he rated it today 6 to 7/10 even with the methadone therapy." Id. at 454.

The other opinion relied on by the ALJ is that of Dr. Davis, PhD, a mental health consultant who did not examine Plaintiff. Id. at 491-508. Dr. Davis completed both a psychiatric review technique assessment and a mental RFC evaluation on June 5, 2012. Id. Dr. Davis found that Plaintiff had a mild limitation in activities of daily living and in difficulties in maintaining social functioning, and a moderate limitation in difficulties in maintaining concentration, persistence, or pace. Id. at 501. Dr. Davis concluded that "[Claimant's] symptoms and impairments would not singly or in combination prevent [claimant] from completing or sustaining work-like activities; however, concentration, persistence and pace are somewhat impacted by the diagnoses and therefore would cause moderate limitations in basic work-like duties." Id. at 503. Dr. Davis' evaluation was solely based on Plaintiff's mental health claims and did not address his physical impairments or pain. Although Dr. Davis did not examine Plaintiff, the ALJ assigned his opinion significant weight because "it is wholly consistent with the mental portion of the residual functional capacity above. Dr. Davis' opinion is also consistent with the objective observations of examining physicians." Id. at 89. The residual functional capacity given by the ALJ is a verbatim recitation of the limitations given by Dr. Davis.

The ALJ does not reference substantial evidence in the record for his decision to close Plaintiff's period of disability after October 9, 2012. To establish the date of medical

improvement, the ALJ relies on Plaintiff's report of pain at a level of three out of ten, but does not indicate why this report is more relevant than Plaintiff's reports of pain at a level of four out of ten, nor does he address the cyclical nature of Plaintiff's pain or his complaint of constant pain. Further, the ALJ's interpretation of medical reports as indicating medical improvement is not reliable. The ALJ references a CT scan to indicate medical improvement, although Plaintiff's care provider determined that the CT scan showed the need for additional measures. The ALJ also references an x ray that cannot be found, with an erroneous citation to "Exhibits C35F." Id. at 88. Finally, the ALJ relies on "admitted daily activities" that "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations," although Plaintiff's report of daily activities indicates that he relies heavily on family and neighbors, is not able to walk for more than 15 minutes without needing rest, and often drops things because of pain in his right hand. The reasons stated by the ALJ do not support a closed period of benefits. Further, the evidence does not support a specific end date of October 10, 2012, as most of the records cited by the ALJ are dated months before that date. The fact that the October 10, 2012 visit was the last medical report then in the record does not necessitate that the date be established as the end of disability.

## 2. Consideration of Impairments in Combination

Plaintiff next assigns error to the ALJ's failure to consider Plaintiff's impairments in combination. Once again, Plaintiff's motion consists only of a recitation of facts in the record without an argument. Regarding consideration of multiple impairments, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments'

18

in finding that the plaintiff does not meet the listings." Loy v. Sec'y of Health and Human Serv., 901 F.2d 1306, 1310 (6th Cir. 1990). A reference to Plaintiff's "'severe impairments' (plural)" and to "a 'combination of impairments,'" in conjunction with an RFC that considers both impairments and with questions posed to the vocational expert that include both impairments, is sufficient to find that the ALJ properly considered Plaintiff's impairments in combination. Id. See also Foster v. Brown, 853 F.2d 483, 490 (6th Cir. 1988).

At step two of the five-step evaluation process, the ALJ found that Plaintiff "has had the following severe impairments: lumbar degenerative disc disease, status post fusion; history of carpal tunnel syndrome, status post release; and anxiety disorder." Id. at 84. At step three, addressing the closed period of benefits from April 24, 2010 to October 9, 2012, the ALJ found that "[t]he claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Id. For the period following the closed period of benefits, the ALJ wrote, "the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 87.

In the RFC for the period after October 9, 2012, the ALJ determined that Plaintiff could perform sedentary work and listed three nonexertional limitations: can understand and remember for simple, detailed, and multi-step detailed tasks, but not at an executive level; can maintain concentration, persistence, and pace for the above tasks; can interact appropriately with the public, co-workers and supervisors within the restrictions applied above; and can adapt to change and set goals within the restrictions applied above. Id. at 87. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files,

ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567.

Dr. Fisher's assessment stated that Plaintiff "may be able to perform jobs, which require sitting, lifting 1 to 10 lbs occasionally" but did not provide carrying, walking, or standing limitations. Id. at 457. At this evaluation, Plaintiff stated that "he has no sensation in the right thumb and numbness of the right hand. He feels this allegation caused him decreased grip strength with the right upper extremity. He feels due to his decreased grip strength, this is the cause him (sic) dropping objects frequently." Id. at 454. The ALJ did not discuss Plaintiff's claims of lifting and carrying difficulties, or his claim that he could not sit, stand or walk without pain. The ALJ did not properly consider all of Plaintiff's impairments in combination.

### 3. Determination of Credibility

Finally, Plaintiff finds error with the ALJ's determination of his credibility. The ALJ addressed Plaintiff's credibility in two sections, first regarding his physical pain and then regarding his anxiety. With respect to Plaintiff's physical pain, the ALJ wrote:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning October 10, 2012, to the extent they are inconsistent with the residual functional capacity assessment. The claimant has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has led to improvement and a greater functional capacity.

Id. at 87.

In evaluating the entirety of the evidence, the ALJ must weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. Walters v. Comm'r of Soc. Sec'y, 127 F.3d 525, 531 (6th Cir. 1997); Kirk v. Sec'y of Health and Human Res., 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. Walters, 127 F.3d at 531 (citing Villarreal v. Sec'y, Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987)). In discounting the credibility of Plaintiff's subjective complaints of pain, the ALJ must consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. See Felisky v. Bowen, 35 F.3d 1027, 1039 (construing 20 C.F.R. § 404.1529(c)(2)). If the ALJ rejects a claimant's testimony as not credible, the ALJ must clearly state the reasons for discounting a claimant's testimony, and the reasons must be supported by the record. Id. at 1036; see also King v. Heckler, 742 F.2d 968, 975 (6th Cir. 1984).

The ALJ does not reference specific evidence to show that Plaintiff "has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." Id. at 87. Plaintiff did complete two function reports in the course of his application for benefits. The first is dated December 4, 2011. Id. at 226-33. In this report, Plaintiff states that "kids do help with animals and general house work;" that he cannot bend to put on and tie his shoes; that "kids assist with cooking and cleaning;" that he "can't mow grass.

21

Household chores kids help;" that house work "takes xtra (sic) time and kids assist;" that while

shopping "kids assist with lifting and bending for items;" that walking causes pain and he cannot

walk for more than 5-10 minutes without stopping to rest; and that sitting causes stiffness. Id. In

this report, Plaintiff notes that he drives his children to school, the store, and their doctor's

appointments, but at the hearing Plaintiff testified that he only drives "to an extent" "a long

distance ... hurts." Id. at 107.

The second function report is dated May 1, 2012. In this report, Plaintiff states that his

children "help other family members with the inside and outside chores;" that Plaintiff tries "to

take care of the house dog when I am able. Family members and a neighbor help take care of the

horses and outside dogs;" his "ex-brother-in-law hauls in the hay for the horses, and my neighbor

and children feed the horses and dogs;" that Plaintiff prepares meals "such as cereal, sandwiches,

frozen meals ... I can't stand long enough to cook large meals. I also have trouble holding the

pots, pans and other dishes due to loss of grip in my right hand. I drop things frequently;" his

"mom does my laundry. My dad or my children do the outside chores;" "my family does most of

the chores;" he drives "when necessary and then only short distances," which includes taking the

children to school; and he cannot walk more than 10 to 15 minutes without needing to rest. Id. at

245-52.

This evidence does not demonstrate that Plaintiff is participating in daily activities

outside of his alleged impairment level. From his reports, it is clear that Plaintiff relies on his

family and neighbors to perform household work, and that he is limited in several areas.

The ALJ's assertion that "treatment has led to improvement and a greater functional

capacity" is addressed above. The ALJ is required to clearly state the reasons for discounting

credibility, and those reasons must be supported by the record. Because he has not done this, the ALJ's determination of Plaintiff's credibility on this issue is not proper.

Regarding Plaintiff's credibility as to the mental impairment of anxiety, the ALJ wrote:

> In regards to the claimant's alleged severity of mental symptoms and limitations, the undersigned finds the claimant only partially credible. While the objective medical evidence indicates some mental impairment, the severity and persistence of symptoms he alleges is not entirely supported. The claimant alleges he has suffered from anxiety, but he did not seek continued mental health treatment from a mental health specialist. Additionally, physicians at The Pain Management Group regularly observed the claimant with an essentially normal psychiatric state of mind. The physicians did not give greater limitation than what is described in the mental portion of the residual functional capacity above.

Id. at 89.

Here, the ALJ has stated clear reasons for discounting Plaintiff's credibility, and those reasons are supported by the record. The ALJ's determination of Plaintiff's credibility regarding anxiety after October 9, 2012 is reasonable.

For these reasons, the Court concludes that the ALJ's decision is not supported by substantial evidence and should be remanded for consideration of an open period of benefits after October 9, 2012.

An appropriate Order is filed herewith.

**ENTERED** this the _27th_ day of July, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge

23

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRY L. REED, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:14-cv-01374 |
| | ) | Senior Judge Haynes |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

In accordance with the Memorandum filed herewith, the Plaintiff's motion for judgment on the record (Docket Entry No. 14) is **GRANTED in part** and **DENIED in part** and the Commissioner's decision is **AFFIRMED in part**. This action is **REMANDED** for the narrow purpose of consideration of an open period of benefits beginning October 10, 2012.

It is so **ORDERED**.

**ENTERED** this the 27 day of July, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge